IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

GARY KIRCHNER,                          )
                                        )
                    Plaintiff,          )
                                        )          CIVIL ACTION
vs.                                     )
                                        )          FILE No. 4:23-CV-00178
JOHN J. IOVALDI, JR. and                )
MARIANNE IOVALDI,                       )
                                        )
                    Defendants.         )

## <u>COMPLAINT</u>

COMES NOW, GARY KIRCHNER, by and through the undersigned counsel, and files this, his Complaint against Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* ("ADA") and the ADA's Accessibility Guidelines, 28 C.F.R. Part 36 ("ADAAG").  In support thereof, Plaintiff respectfully shows this Court as follows:

## <u>JURISDICTION</u>

1.      This Court has original jurisdiction over the action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims pursuant to 42 U.S.C. § 12181 *et seq.*, based upon Defendants' JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, failure to remove physical barriers to access and violations of Title III of the ADA.

## PARTIES

2.      Plaintiff, GARY KIRCHNER (hereinafter "Plaintiff"), is and has been at all times relevant to the instant matter, a natural person residing in St. Louis, Missouri, (St. Louis County).

3.      Plaintiff is disabled as defined by the ADA.

4.      Plaintiff is required to traverse in a wheelchair and is substantially limited in performing one or more major life activities, including but not limited to: walking, standing, grabbing, grasping and/or pinching.

5.      Plaintiff uses a wheelchair for mobility purposes.

6.      In addition to being a customer of the public accommodation on the Property, Plaintiff is also an independent advocate for the rights of similarly situated disabled persons and is a "tester" for the purpose of enforcing Plaintiff's civil rights, monitoring, determining and ensuring whether places of public accommodation are in compliance with the ADA.  His motivation to return to a location, in part, stems from a desire to utilize ADA litigation to make Plaintiff's community more accessible for Plaintiff and others; and pledges to do whatever is necessary to demonstrate the plausibility of Plaintiff returning to the Property once the barriers to access identified in this Complaint are removed in order to strengthen the already existing standing to confer jurisdiction upon this Court so an injunction can be issued correcting the numerous ADA violations on this property. ("Advocacy Purposes").

7.      Defendant, JOHN J. IOVALDI, JR. (hereinafter "JOHN J. IOVALDI, JR.") is an individual who transacts business in the State of Missouri and within this judicial district.

2

8.     Defendant, JOHN J. IOVALDI, JR., may be properly served with process via Owner at:  3801 Watson Road, St. Louis, MO  63109.

9.     Defendant, MARIANNE IOVALDI (hereinafter "MARIANNE IOVALDI") is an individual who transacts business in the State of Missouri and within this judicial district.

10.     Defendant, MARIANNE IOVALDI, may be properly served with process via Owner at:  3801 Watson Road, St. Louis, MO  63109.

## FACTUAL ALLEGATIONS

11.     On or about January 10, 2023, Plaintiff was a customer at "Pietro's", a business located at 3801 Watson Road, St. Louis, MO  63109, referenced herein as "Pietro's".  *See* Receipt attached as Exhibit 1.  *See* Selfie attached as Exhibit 2.

12.     Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, are the owners or co-owners of the real property and improvements that Pietro's is situated upon and that is the subject of this action, referenced herein as the "Property."

13.     Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, as property owners, are responsible for complying with the ADA for both the exterior portions and interior portions of the Property.  Even if there is a lease between Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, and a tenant allocating responsibilities for ADA compliance within the unit the tenant operates, that lease is only between the property owner and the tenant and does not abrogate the Defendants' requirement to comply with the ADA for the entire Property it owns, including the interior portions of the Property which are public accommodations.  *See* 28 CFR § 36.201(b).

14.     Plaintiff's access to Pietro's and other businesses at the Property, located at 3801 Watson Road, St. Louis, MO  63109, St. Louis County Property Appraiser's property

identification numbers:   59849190000, 59849207000 and 59849217000 ("the Property"), and/or

full and equal enjoyment of the goods, services, foods, drinks, facilities, privileges, advantages

and/or accommodations offered therein were denied and/or limited because of his disabilities,

and he will be denied and/or limited in the future unless and until Defendants are compelled to

remove the physical barriers to access and correct the ADA violations that exist at the Property,

including those set forth in this Complaint.

15.     Plaintiff lives 2 miles from the Property.

16.     Given the close vicinity of the Property to Plaintiff's residence, Plaintiff is

routinely driving by the Property at least twice a month.

17.     **PRESUIT NOTICE:** On January 24, 2023, Plaintiff mailed via certified

mail/return receipt requested a pre-suit notice of the violations and his intent to file this lawsuit if

a settlement could not be reached to resolve the claim prior to filing this Complaint.  *See* Pre-suit

Letter attached as Exhibit 3.  Also attached is the return receipt showing receipt of the presuit

letter on January 27, 2023.  *See* Signature card attached as Exhibit 4

18.     Plaintiff has visited the Property at least once before as a customer and advocate

for the disabled.  Plaintiff intends on revisiting the Property within six months after the barriers

to access detailed in this Complaint are removed and the Property are accessible again.  The

purpose of the revisit is to be a return customer, to determine if and when the Property are made

accessible and to substantiate already existing standing for this lawsuit for Advocacy Purposes.

19.     Plaintiff intends on revisiting the Property to purchase goods and/or services as a

return customer as well as for Advocacy Purposes but does not intend to re-expose himself to the

ongoing barriers to access and engage in a futile gesture of visiting the public accommodation

known to Plaintiff to have numerous and continuing barriers to access.

20.     Plaintiff travelled to the Property as a customer one time previously and as an independent advocate for the disabled, personally encountered many barriers to access the Property that are detailed in this Complaint, engaged many barriers, suffered legal harm and legal injury, and will continue to suffer such harm and injury if all the illegal barriers to access present at the Property identified in this Complaint are not removed.

21.     Plaintiff became aware of all identified barriers prior to filing the Complaint and because Plaintiff intends on revisiting the Property as a customer and advocate for the disabled within six months or sooner after the barriers to access are removed, it is likely that despite not actually encountering a particular barrier to access on one visit, Plaintiff may encounter a different barrier to access identified in the Complaint in a subsequent visit as, for example, one accessible parking space may not be available and he would need to use an alternative accessible parking space in the future on his subsequent visit.  As such, all barriers to access identified in the Complaint must be removed in order to ensure Plaintiff will not be exposed to barriers to access and legally protected injury.

22.     Plaintiff's inability to fully access the Property and the stores in a safe manner and in a manner which inhibits the free and equal enjoyment of the goods and services offered at the Property, both now and into the foreseeable future, constitutes an injury in fact as recognized by Congress and is historically viewed by Federal Courts as an injury in fact.

## COUNT I
## VIOLATIONS OF THE ADA AND ADAAG

23.     On July 26, 1990, Congress enacted the Americans with Disabilities Act 42 U.S.C. § 12101 *et seq.*

24.     Congress found, among other things, that:

(i)      some 43,000,000 Americans have one or more physical or mental

5

disabilities, and this number is increasing as the population as a whole is growing older;

(ii)     historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem;

(iii)    discrimination against individuals with disabilities persists in such critical areas as employment, housing public accommodations, education, transportation, communication, recreation, institutionalization, health services, voting, and access to public services;

(iv)    individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser service, programs, activities, benefits, jobs, or other opportunities; and

(v)     the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and non-productivity.

42 U.S.C. § 12101(a)(1) - (3), (5) and (9).

25.    Congress explicitly stated that the purpose of the ADA was to:

(i)     provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities;

(ii)    provide a clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; and

        * * * * *

(iv)    invoke the sweep of congressional authority, including the power to enforce the fourteenth amendment and to regulate commerce, in order to address the major areas of discrimination faced day-to-day by people with disabilities.

42 U.S.C. § 12101(b)(1)(2) and (4).

26.     The congressional legislation provided places of public accommodation one and a half years from the enactment of the ADA to implement its requirements.

27.     The effective date of Title III of the ADA was January 26, 1992 (or January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181; 28 C.F.R. § 36.508(a).

28.     The Property is a public accommodation and service establishment.

29.     Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the Department of Justice and Office of Attorney General promulgated federal regulations to implement the requirements of the ADA. 28 C.F.R. Part 36.

30.     Public accommodations were required to conform to these regulations by January 26, 1992 (or by January 26, 1993 if a defendant has 10 or fewer employees and gross receipts of $500,000 or less). 42 U.S.C. § 12181 *et seq.*; 28 C.F.R. § 36.508(a).

31.     The Property must be, but is not, in compliance with the ADA and ADAAG.

32.     Plaintiff has attempted to, and has to the extent possible, accessed the Property in his capacity as a customer at the Property and as an independent advocate for the disabled, but could not fully do so because of his disabilities resulting from the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

33.     Plaintiff intends to visit the Property again as a customer and as an independent advocate for the disabled, in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at the Property, but will be unable to fully

do so because of his disability and the physical barriers to access, dangerous conditions and ADA violations that exist at the Property that preclude and/or limit his access to the Property and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint.

34. Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, have discriminated against Plaintiff (and others with disabilities) by denying his access to, and full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of the Property, as prohibited by, and by failing to remove architectural barriers as required by, 42 U.S.C. § 12182(b)(2)(A)(iv).

35. Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, will continue to discriminate against Plaintiff and others with disabilities unless and until Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, are compelled to remove all physical barriers that exist at the Property, including those specifically set forth herein, and make the Property accessible to and usable by Plaintiff and other persons with disabilities.

36. A specific list of unlawful physical barriers, dangerous conditions and ADA violations which Plaintiff experienced and/or observed that precluded and/or limited Plaintiff's access to the Property and the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of the Property include, but are not limited to:

**ACCESSIBLE ELEMENTS:**

    i. Northwest of Pietro's, there are two accessible parking spaces that are missing identification signs in violation of Section 502.6 of the 2010 ADAAG

standards. This barrier to access would make it difficult for Plaintiff to locate an accessible parking space.

ii.   Northwest of Pietro's, due to the presence of a storm drain that creates openings that are approximately 1 inch wide, the accessible parking space is in violation of Sections 502.4 and 302.3 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property.

iii.   Northwest of Pietro's, the accessible parking space has a slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to exit and enter their vehicle while parked at the Property as Plaintiff's wheelchair may roll down the slope while entering or exiting the vehicle.

iv.   Northwest of Pietro's, the accessible parking space has a cross slope in excess of 1:48 in violation of Section 502.4 of the 2010 ADAAG standards and is not level. This barrier to access would make it dangerous and difficult for Plaintiff to enter and exit the vehicle as a level surface is needed so the wheelchair does not tip over and injure Plaintiff as excessive cross-slopes increases the likelihood of Plaintiff's wheelchair tipping over on its side and injuring Plaintiff.

v.   Northwest of Pietro's, due to the presence of an electric pole in the access aisle, the access aisle is not clear in violation of Section 502.4 of the 2010 ADAAG Standards. This barrier to access would make it difficult for Plaintiff to access the units of the Property.

9

vi.     Inside Pietro's, the interior has walking surfaces leading to the restroom lacking a 36 (thirty-six) inch clear width, due to the presence of a tiled wall that intrudes into the accessible route, in violation of Section 403.5.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff to properly utilize public features at the Property because the width of Plaintiff's wheelchair would prevent passage through areas with a width less than 36 inches.

vii.     As a result of the barrier to access identified in (vi) above, there is not a single accessible route connecting the accessible entrance of Pietro's to the accessible elements inside the restaurant, like the restroom, in violation of Section 206.2.4 of the 2010 ADAAG Standards. This barrier to access would prevent individuals in a wheelchair, like Plaintiff, from accessing the restroom.

viii.     Inside Pietro's, the bar is lacking any portion of the counter that has a maximum height of 34 (thirty-four) inches from the finished floor in violation of Section 902.3 of the 2010 ADAAG standards, all portions of the bar exceed 34 (thirty-four) inches in height from the finished floor. This barrier to access would make it difficult for Plaintiff to enjoy the unique eating experience at the bar.

ix.     Inside Pietro's, there is not at least 5% (five percent) of the bar area dining surfaces provided for consumption of food or drink which complies with Section 902.3 requiring the maximum height of the dining surface to be

maximum 34 (thirty-four) inches above the finished floor in violation of Section 226.1 of the 2010 ADAAG standards.

x.  Inside Pietro's, the inner door to the accessible entrance lacks a clear minimum maneuvering clearance due to the fact the end of the latch side of the accessible entrance door being within 18 inches to the adjacent wall in violation of Section 404.2.4 of the 2010 ADAAG standards. This barrier to access would cause Plaintiff difficulty in utilizing the door to gain access to this unit because individuals in a wheelchair have their feet and legs sticking out in front of them thus requiring additional space to reach the door hardware and open the door.  The current configuration of the accessible entrance of this unit blocks Plaintiff's ability to reach the door hardware and open the door.

xi.  Outside of Pietro's, there is not at least 5% (five percent) of the exterior dining surfaces provided for consumption of food or drink that comply with Section 902.2 of the 2010 ADAAG standards, requiring appropriate knee and toe clearance complying with Section 306 of the 2010 ADAAG standards, positioned for a forward approach, in violation of Section 226.1 of the 2010 ADAAG standards.  If Plaintiff were to eat at the Property in the future, this barrier to access would prevent Plaintiff from using the dining surfaces currently present as Plaintiff's own feet would block Plaintiff's ability to access the dining surfaces.

xii.  The total number of accessible parking spaces is inadequate and is in violation of Section 208.2 of the 2010 ADAAG standards.  There are 70 marked parking spaces on the Property, which requires a minimum of three accessible

parking spaces, but there are only two accessible parking spaces. This barrier to access would make it difficult for Plaintiff to locate an available accessible parking space as such a small number of accessible parking spaces in a large parking lot increases the likelihood of there not being an available accessible parking space.

xiii.   Due to an approximate 5-inch vertical rise at the curb, the Property lacks an access route from site arrival points such as the public streets and sidewalks to the accessible entrance of Kounter Kulture, in violation of Section 206.2.1 of the 2010 ADAAG standards. This barrier to access would make it dangerous and difficult for Plaintiff to access the Property.

xiv.   Defendants fail to adhere to a policy, practice and procedure to ensure that all facilities are readily accessible to and usable by disabled individuals.

**PIETRO'S RESTROOMS**

xv.   The accessible toilet stall lacks the required size and turning clearance as required in Section 604.8.1.1 of the 2010 ADAAG standards.  This barrier to access would make it difficult for Plaintiff's wheelchair to fit into and maneuver within the toilet stall.

xvi.   The restrooms have grab bars adjacent to the commode which are not in compliance with Section 604.5 of the 2010 ADAAG standards as the rear bar is missing. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely transfer from the wheelchair to the toilet and back to the wheelchair.

Case: 4:23-cv-00178-SRC   Doc. #: 1   Filed: 02/15/23   Page: 13 of 18 PageID #: 13

xvii.  The distance of the centerline of the toilet is more than 18" from the side wall. As a result, the toilet is not adequately positioned from the side wall or partition positioning in violation of Section 604.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities.

xviii.  The accessible toilet stall door has a maximum clear width below 32 (thirty-two) inches, is too narrow and violates Section 604.8.1.2 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities as wheelchair typically has a clear width of between 30 and 32 inches and the wheelchair will not be able to fit through the doorway to access the restroom.  In the case that the wheelchair may barely fit through, the tight doorway would likely injure Plaintiff's hands as they could get caught between the wheel and the doorway.

xix.  The height of coat hook located in accessible restroom stall is above 48 (forty-eight) inches from the finished floor in violation of Section 308.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the coat hook as individuals in wheelchairs are seated and have significantly less reach range than individuals who stand up.

xx.  Restrooms have a sink with inadequate knee and toe clearance in violation of Section 306 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to utilize the

13

restroom sink as Plaintiff is seated in a wheelchair and, when seated, Plaintiff's feet and legs protrude out in front.  In order to properly utilize a sink, Plaintiff's legs must be able to be underneath the surface of the sink, but due to the improper configuration of the sink, there is no room underneath for Plaintiff's legs and feet.

xxi.   The actionable mechanism of the paper towel dispenser in the restroom is located outside the maximum prescribed vertical reach range of 48 inches above the finished floor as set forth in Section 308.2.1 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to reach the actionable mechanism of the paper towel dispenser as individuals in wheelchairs are seated and have significantly less reach range than individuals who stand up.

xxii.   The door to the restrooms has a maximum clear width below 32 (thirty-two) inches in violation of Section 404.2.3 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely utilize the restroom facilities as wheelchair typically has a clear width of between 30 and 32 inches and the wheelchair will not be able to fit through the doorway to access the restroom.  In the case that the wheelchair may barely fit through, the tight doorway would likely injure Plaintiff's hands as they could get caught between the wheel and the doorway.

xxiii.   The door exiting the restroom lacks a clear minimum maneuvering clearance, due to the proximity of the door hardware within 18 inches to the adjacent wall, in violation of Section 404.2.4 of the 2010 ADAAG standards.  This

barrier to access would make it difficult for Plaintiff and/or any disabled individual to safely exit the restroom due to the fact individuals in wheelchairs have their feet sticking out in front of them and when there is inadequate clearance near the door (less than 18 inches), their protruding feet block their ability to reach the door hardware to open the door.

xxiv.    The restroom lacks signage in compliance with Sections 216.8 and 703 of the 2010 ADAAG standards. This barrier to access would make it difficult for Plaintiff and/or any disabled individual to locate accessible restroom facilities.

37.    The violations enumerated above may not be a complete list of the barriers, conditions or violations encountered by Plaintiff and/or which exist at the Property.

38.    Plaintiff requires an inspection of the Property in order to determine all of the discriminatory conditions present at the Property in violation of the ADA.

39.    The removal of the physical barriers, dangerous conditions and ADA violations alleged herein is readily achievable and can be accomplished and carried out without significant difficulty or expense. 42 U.S.C. § 12182(b)(2)(A)(iv); 42 U.S.C. § 12181(9); 28 C.F.R. § 36.304.

40.    All of the violations alleged herein are readily achievable to modify to bring the Property into compliance with the ADA.

41.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because the nature and cost of the modifications are relatively low.

42.    Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property is readily achievable because Defendants, JOHN J.

IOVALDI, JR. and MARIANNE IOVALDI, have the financial resources to make the necessary modifications since the parcel is valued at $483,312.00 according to the Property Appraiser website.

43.     Upon information and good faith belief, the removal of the physical barriers and dangerous conditions present at the Property are readily achievable.

44.     The removal of the physical barriers and dangerous conditions present at the Property is also readily achievable because Defendants have available to it a $5,000.00 tax credit and up to a $15,000.00 tax deduction available from the IRS for spending money on accessibility modifications.

45.     Upon information and good faith belief, the Property has been altered since 2010.

46.     In instances where the 2010 ADAAG standards do not apply, the 1991 ADAAG standards apply, and all of the alleged violations set forth herein can be modified to comply with the 1991 ADAAG standards.

47.     Plaintiff is without adequate remedy at law, is suffering irreparable harm, and reasonably anticipates that he will continue to suffer irreparable harm unless and until Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, are required to remove the physical barriers, dangerous conditions and ADA violations that exist at the Property, including those alleged herein.

48.     Plaintiff's requested relief serves the public interest.

49.     The benefit to Plaintiff and the public of the relief outweighs any resulting detriment to Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI.

50.     Plaintiff's counsel is entitled to recover its reasonable attorney's fees and costs of litigation from Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, pursuant to 42

U.S.C. §§ 12188 and 12205.

51.     Pursuant to 42 U.S.C. § 12188(a), this Court is provided authority to grant injunctive relief to Plaintiff, including the issuance of an Order directing Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, to modify the Property to the extent required by the ADA.

WHEREFORE, Plaintiff prays as follows:

(a)     That the Court find Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, in violation of the ADA and ADAAG;

(b)     That the Court issue a permanent injunction enjoining Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, from continuing their discriminatory practices;

(c)     That the Court issue an Order requiring Defendants, JOHN J. IOVALDI, JR. and MARIANNE IOVALDI, to (i) remove the physical barriers to access and (ii) alter the subject Property to make it readily accessible to and useable by individuals with disabilities to the extent required by the ADA;

(d)     That the Court award Plaintiff his reasonable attorneys' fees, litigation expenses and costs; and

(e)     That the Court grant such further relief as deemed just and equitable in light of the

circumstances.

Dated: February 15, 2023.

Respectfully submitted,

Law Offices of
THE SCHAPIRO LAW GROUP, P.L.

/s/  Douglas S. Schapiro
Douglas S. Schapiro, Esq.
State Bar No. 54538FL
The Schapiro Law Group, P.L.
7301-A W. Palmetto Park Rd., #100A
Boca Raton, FL 33433
Tel: (561) 807-7388
Email: schapiro@schapirolawgroup.com


ATTORNEYS FOR PLAINTIFF
GARY KIRCHNER